# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ANNA KATIE CULP,        )
       )
             Plaintiff,        )
       )
v.        )        Case No. CIV-19-424-PRW
       )
JIM REYNOLDS, individually and in his        )
official capacity as Cleveland County        )
Treasurer,        )
       )
             Defendant.        )

## ORDER

Before the Court is Defendant Jim Reynolds' motion to dismiss Plaintiff's claims (Dkt. 6) for failure to state a claim upon which relief can be granted. Plaintiff opposes this request (Dkt. 12) and asks that she be granted leave to amend any claim the Court dismisses. For the reasons outlined below, the motion is granted.

### *Background*

Plaintiff is a former employee of the Cleveland County Treasurer's Office who was terminated in July 2019.[1] The reason given was her refusal to accept a transfer to a new department within the office. Plaintiff claims that this reason was pretextual, and that she was terminated for her involvement in helping a fellow employee report sexual assault and harassment to law enforcement and Defendant Reynolds.[2] As a result, she brings claims against Defendant Reynolds individually and in his official capacity as Cleveland County

---

[1] Compl. (Dkt. 1) at 2.

[2] *Id*. at 3–4.

Treasurer for unlawful retaliation pursuant to Title VII and wrongful discharge pursuant to Oklahoma's recognition of public policy torts.[3]

### Standard of Review

Defendant filed a motion to dismiss all claims asserted against him arguing that Plaintiff fails to state claims upon which relief can be granted.[4] In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[5] While a complaint need not recite "detailed factual allegations," "a plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[6] The pleaded facts must establish that the claim is plausible.[7]

### Analysis

### Individual capacity claims and punitive damages claim

First, Defendant argues that all claims against him in his individual capacity must be dismissed because both Title VII and Oklahoma law do not impose liability on

---

[3] *Id*. at 5–8.

[4] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6).

[5] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir.1996)).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[7] *Id*.

individual supervisors for employment discrimination claims.[8] Defendant likewise argues that Plaintiff's claim for punitive damages must be dismissed because the law does not allow for recovery of punitive damages in § 1983 actions.[9] Plaintiff concedes both arguments,[10] so Plaintiff's claims against Defendant Reynolds in his individual capacity and for punitive damages are dismissed with prejudice.

### *Retaliation*

Defendant next seeks dismissal of Plaintiff's Title VII retaliation claim related to her reporting of alleged harassment by Brandon Jones and Kim Jones.[11] Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[12]

To establish a prima facie case of retaliation,[13] Plaintiff must show (1) she engaged in protected activity under Title VII, (2) Defendant Reynolds took an adverse employment

---

[8] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 10–11.

[9] *Id*. at 20–21.

[10] Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss (Dkt. 12) at 6, n. 1.

[11] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 11–13.

[12] 42 U.S.C. § 2000e—3(a).

[13] Plaintiff does not have the burden to show a prima facie case of discrimination at this stage of the case. *See infra* n. 18–22.

action against her,[14] and (3) a causal connection exists between the protected activity and the adverse action.[15] To satisfy the causation element "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[16] This equates to proof of "'circumstances that justify an inference of retaliatory motive.'"[17]

The Tenth Circuit explains how the failure to state a claim standard of Fed. R. Civ. P. 12(b)(6) applies to a Title VII retaliation claim:

> A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than " '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' "[18] "While we do not mandate the pleading of any specific facts in particular," a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides "sheer speculation."[19] "[A] plaintiff should have"—and must plead—"at least some relevant information to make the claims plausible on their face."[20] . . . "Pleadings that do not allow

---

[14] *See Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 605–06 (10th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)) ("For a retaliation claim under Title VII, an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'").

[15] *Stover*, 382 F.3d at 1071.

[16] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

[17] *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)).

[18] *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[19] *Id.* at 1194.

[20] *Id.* at 1193.

for at least a reasonable inference of the legally relevant facts are insufficient."[21][22]

### 1. Retaliation based on reporting conduct of Brandon Jones

First, Defendant argues that Plaintiff fails to state a claim for retaliation related to Brandon Jones' alleged harassment of her coworker because this incident involved no conduct protected by Title VII.[23] According to Defendant, not only was Plaintiff not present during the alleged sexual assault, but it "occurred off-site and [was committed] by a non-employee of the Treasurer's Office . . . ."[24] Assuming Plaintiff attempts to bring a hostile work environment claim, Defendant explains that it necessarily requires harassment to occur in the workplace, not at an after party at Libby's Café.[25] Moreover, Defendant asserts that Plaintiff fails to state a retaliation claim because it is undisputed that Brandon Jones is not a Treasurer's Office employee.[26] While Defendant recognizes that employers may be liable for third-party non-employees in some circumstances, he argues "such instances are rare and limited to a situation when the employee's interaction with the third party is a condition of the employment" and the employer had knowledge of a pattern of harassing

---

[21] *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (internal quotation marks omitted).

[22] *Bekkem v. Wilkie*, 915 F.3d 1258, 1274–75 (10th Cir. 2019).

[23] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 11–12.

[24] *Id*. at 11.

[25] *Id*.

[26] *Id*. at 12.

conduct.[27] No such condition of employment or known pattern existed here, says Defendant, because:

> [Plaintiff's coworker] was not required to be in the presence of non-employee Mr. Jones at the Libby's Café on December 9, 2016. It was not a condition of her employment with the Treasurer's Office to attend a private get-together after the office party concluded. Further, there are no allegations in Plaintiff's Complaint that Mr. Jones had a history of sexually harassing Treasurer's Office employees, or that Mr. Reynolds was aware of any such pattern of conduct, or that he refused to remedy the situation.[28]

Plaintiff responds that she has stated a retaliation claim because "assisting the victim in reporting her sexual assault at a work-related function by the husband of a coworker to law enforcement and her employer with the aim of preventing sexual harassment and assault in the workplace in the future" constitutes protected opposition to discrimination.[29] She continues:

> [I]t is plausible that Culp and the victim reasonably believed that Brandon's actions violated the victim's right to be free from sexual harassment and assault. It is further plausible that Culp addressed the issue in the workplace because the sexual assault was sufficiently related to the workplace to cause her to believe that, if not addressed by the employer, the actions would likely rise to the level of a hostile work environment. Indeed, but for Culp's actions, the victim could very well have been assaulted at work. But Culp acted to prevent this. And Title VII protects such actions.[30]

---

[27] *Id.*

[28] *Id.*

[29] Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss (Dkt. 12) at 9.

[30] *Id.* at 10–11.

Plaintiff also explains that to be protected by Title VII, she need not have complained on her own behalf or prove an actual violation of Title VII.[31] Finally, Plaintiff now—for the first time—contends that Brandon Jones is an employee of the Cleveland County Commissioners Office and is therefore a coworker of Plaintiff and her allegedly sexually assaulted coworker.[32]

Upon a review of the complaint, the Court agrees with Defendant that this incident does not involve conduct implicating Title VII's protections against discrimination in the workplace. First, the complaint alleges that Plaintiff's coworker was assaulted by Brandon Jones, the spouse of another coworker, Kim Jones.[33] It does not allege that Brandon Jones was a coworker of Plaintiff,[34] nor that Defendant Reynolds had any supervisory control over Brandon Jones—particularly not at an offsite after-party. Accordingly, it cannot be inferred that Defendant Reynolds may be liable under Title VII for the actions of Brandon Jones, a non-employee, third party, that occurred outside the workplace.

## 2. Retaliation based on reporting conduct of Kim Jones

Second, Defendant argues that Plaintiff fails to state a claim for retaliation related to Kim Jones' alleged harassment of Plaintiff and her coworker. In Defendant's view,

---

[31] *Id.* at 11.

[32] *Id.* at 12, n. 21.

[33] Compl. (Dkt. 1) at 3.

[34] The Court in its discretion disregards this new information raised in Plaintiff's response brief about Brandon Jones' employment status. *See Bruner v. Baker*, 506 F.3d 1021, 1030 (10th Cir. 2007).

Plaintiff has pleaded insufficient facts to show she engaged in protected activity and to establish a causal connection between her termination and a protected activity.[35] Defendant concedes that Plaintiff sufficiently pled that she reported Kim Jones' behavior to her supervisor, Defendant Reynolds.[36] But Defendant argues that the behavior Plaintiff complained of was not the type of harassment barred by Title VII.[37] He explains that Title VII is not a general civility code, but rather a prohibition against gender-based harassment that is "'so intimidating, offensive, or hostile that it poisoned the work environment.'"[38] In Defendant's view, the factual allegations in the complaint fail to meet this standard because not only are they conclusory and vague, but they also provide no explanation as to how any of Kim Jones' actions were because of Plaintiff's gender.[39]

Defendant also argues Plaintiff fails to state a retaliation claim because while she alleges that she complained to her supervisor of a coworker and third party's behavior and was subsequently fired, she does not include any facts from which an inference of a causal connection can be drawn.[40]

Plaintiff responds that the conduct she complained of was severe because it included threats of physical violence, but even if it wasn't, she doesn't have to wait until harassment

---

[35] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 13−16.

[36] *Id*. at 13.

[37] *Id*.

[38] *Id*. at 14 (quoting *Gilooly v. Mo. Dept. of Health and Senior Serv., Div. of Senior Serv*., 421 F.3d 734, 738 (8th Cir. 2005)).

[39] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 15.

[40] *Id*. at 15.

is severe to claim the protections of Title VII.[41] She continues that she doesn't need to allege anything more to state a claim for causation because she alleged sexual harassment, and courts affirm that sexual harassment is discrimination based on sex.[42]

Again, the Court finds Plaintiff fails to state a retaliation claim as it relates to the alleged sexual harassment by coworker Kim Jones because the factual allegations do not allow for a reasonable inference of the legally relevant facts. The complaint alleges Plaintiff was terminated for reporting "gender-based harassment" against Plaintiff and her coworker by Kim Jones.[43] It asserts that "Kim was openly hostile to Culp, alleging that the victim never would have come forward without Culp's influence," and she even "threatened Culp with physical violence."[44] In addition, "Kim continued to subject the victim to continued gender-based harassment."[45] These allegations are vague and conclusory, and the complaint lacks any factual allegations that provide insight into how Kim Jones' alleged harassment was based on gender or sex.

To the extent this claim can be construed as a hostile work environment claim,[46] Plaintiff fails to state a claim for the same reason: the complaint lacks any factual

---

[41] Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss (Dkt. 12) at 14.

[42] *Id.*

[43] Compl. (Dkt. 1) at 5.

[44] *Id.* at 4.

[45] *Id.*

[46] *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (internal citation omitted) ("To establish [that] a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) [due to the

allegations that provide insight into how Kim Jones' alleged harassment was based on gender or sex. Accordingly, Plaintiff fails to state a retaliation claim upon which relief can be granted, so this claim is dismissed without prejudice.

### *Public policy tort against Defendant Reynold in his official capacity*

Finally, Defendant argues Plaintiff's *Burk* tort claim must be dismissed.[47] The Oklahoma Supreme Court explains:

> A viable *Burk* claim [for wrongful discharge of an at-will employee] must allege[:] (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.[48]

Plaintiff's complaint alleges (1) she was fired by Defendant Reynolds; (2) she was an at-will employee; (3) she "was fired in significant part for her role in encouraging the victim to report her sexual assault and for standing up for the victim's rights to be free from harassment based on sex in the workplace;" (4) "Oklahoma public policy . . . condemns harassment based on sex," citing 25 O.S. § 1350, the Oklahoma Anti-Discrimination Act,[49] and "Oklahoma public policy supports the truthful reporting of crimes and condemns

---

harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.").

[47] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 16–19.

[48] *Moore v. Warr Acres Nursing Ctr.*, LLC, 2016 OK 28, ¶ 19, 376 P.3d 894, 899–900 (quoting *Vasek v. Board of County Commissioners*, 2008 OK 35, ¶¶ 27–28, 186 P.3d 928).

[49] 25 O.S. § 1350; Compl. (Dkt. 1) at 7.

actions that would discourage such conduct," citing 21 O.S. §§ 267, 455, 540, and 546.[50]

Reading the complaint generously, it appears Plaintiff asserts *Burk* tort claims based on two separate public policies: (1) condemnation of harassment based on sex, and (2) support of the truthful reporting of crimes and condemnation of actions that would discourage such conduct.

### 1. Public policy: condemnation of harassment based on sex

The Oklahoma Legislature abrogated the common law *Burk* tort by enacting the Oklahoma Anti-Discrimination Act, which creates "[a] cause of action for employment-based discrimination" and abolishes "any common law remedies."[51] A cause of action for employment-based discrimination "includes a cause of action against an employer for discrimination based on . . . sex . . . ."[52]

Plaintiff alleges she was fired in significant part for (1) encouraging a sexual assault victim to come forward, and (2) for standing up for the victim's rights to be free from sexual harassment in the workplace.[53] To the extent her allegations assert a *Burk* tort claim based on sex discrimination, such a claim has been abrogated by § 1350. Defendant Reynolds further argues that dismissal with prejudice is appropriate because an amendment asserting an OADA claim would be futile since more than ninety days have elapsed since

---

[50] As to the fifth *Burk* tort element, the Oklahoma Supreme Court explains that the availability of a remedy via a § 1983 action is not enough to preclude a *Burk* tort. *See Vasek v. Bd. of Cty. Comm'rs of Noble Cty.*, 2008 OK 35, ¶ 27, 186 P.3d 928, 934.

[51] *See also MacDonald v. Corp. Integris Health*, 2014 OK 10, ¶ 4, 321 P.3d 980, 982.

[52] 25 O.S. § 1350(b).

[53] Compl. (Dkt. 1) at 7.

Plaintiff was issued her EEOC Notice of Right to Sue letter, citing May 13, 2019, as the deadline.[54] Plaintiff does not address this point in her response,[55] but since this lawsuit was filed on May 9, 2019, amendment may not be futile if it relates back to the date of filing. Thus, Plaintiff's *Burk* tort claim based on sex discrimination is dismissed without prejudice.

### 2. Public policy: support of the truthful reporting of crimes and condemnation of actions that would discourage such conduct

Defendant continues that to the extent a *Burk* tort claim is allowed to proceed, it should nevertheless be dismissed because Plaintiff fails to identify an actionable public policy that was violated by her discharge.[56] Plaintiff cites 21 O.S. §§ 267,[57] 455,[58] 540,[59] and 546[60] to demonstrate that "Oklahoma public policy supports the truthful reporting of crimes and condemns actions that would discourage such conduct."[61] In Defendant Reynolds' view, these statutes from the Crime and Punishment title of the Oklahoma

---

[54] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 17 (citing 25 O.S. § 1350(I) ("No action may be filed in district court as provided in this section more than ninety (90) days after receiving a Notice of Right to Sue.")).

[55] Plaintiff does, however, allege in her complaint that this action was filed within 90 days from the issuance of her letter. *See* Compl. (Dkt. 1) at 6.

[56] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 17–19.

[57] "Preventing [executive] officer's performance of duty"

[58] "Preventing witness from giving testimony--Threatening witness who has given testimony"

[59] "Obstructing officer"

[60] "Suppressing evidence"

[61] Compl. (Dkt. 1) at 7.

statutes do not identify an actionable public policy because "before a statute can provide actionable public policy, that statute must touch on the employer-employee relationship."[62] Moreover, Plaintiff fails to state a claim because her actions were not done to vindicate her own right or interest, or the rights of the public.[63] Plaintiff disagrees with Defendant that a statute must touch on the employer-employee relationship and her actions must have been done to vindicate her own right or the rights of the public to constitute an actionable public policy.[64]

First, the Court is unaware, and neither party has identified, any Oklahoma precedent recognizing the use of the cited criminal statutes as a basis from which to derive actionable public policy for a *Burk* claim. Moreover, the Court does not discern a clear and compelling public policy from these statutes. As a general matter, these statutes provide punishments for conduct that interferes with the duties of public officers and the business of the court. The Court agrees with Plaintiff that they promote the truthful reporting of crimes and condemn certain actions that would discourage such conduct, but this is not enough to support a *Burk* tort claim. The Court has not been presented any controlling authority allowing the proffered public policy—the truthful reporting of crimes and condemning actions that would discourage such conduct—to support a *Burk* claim.

---

[62] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 17.

[63] *Id*. at 18.

[64] Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss (Dkt. 12) at 16–19.

Second, although not required to identify an actionable public policy, Plaintiff does not allege that any of the conduct criminalized by the cited statutes occurred here. Plaintiff alleges that she encouraged her coworker to report the sexual assault and sexual harassment her coworker suffered, and Plaintiff attended meetings with her coworker and Defendant Reynolds about these issues;[65] Plaintiff does not allege that her employer prevented her from testifying at a trial or cooperating with law enforcement officers.

Third, guidance from Oklahoma Supreme Court suggests the cited statutes are not enough to support a *Burk* tort claim. In *Hayes v. Eateries, Inc.*,[66] the Oklahoma Supreme Court held that an employee terminated for reporting embezzlement by his coworker against his employer both internally and externally is not "so imbued with a clear and compelling public policy such that a tort claim is stated if the employer discharges the employee for so reporting."[67] To reach this conclusion, the Oklahoma Supreme Court noted that the employee was not seeking to vindicate his own legal rights or interests, but instead those of his employer.[68] Additionally, in reporting the crime to outside law enforcement, the employee was "not seeking to vindicate a public wrong where the victim of the crime could in any real or direct sense be said to be the general public, as where crimes or violations of health or safety laws are involved."[69] It recognized that "[a]lthough the public

---

[65] Compl. (Dkt. 1) at 3–4.

[66] 1995 OK 108, 905 P.2d 778.

[67] *Id*. at 786.

[68] *Id*.

[69] *Id*.

14

in a very general way might be said to be the indirect victim of all crimes we are not aware of a general consensus sufficient to base a *Burk* tort claim upon that there is a public policy so thoroughly established in the public consciousness . . . " that covered these facts.[70]

From *Hayes* we learn that to support a *Burk* tort claim, the underlying public policy must be clear and compelling, and just because a plaintiff is discharged for reporting a crime does not automatically mean that threshold is met. The crime must be in some sense against the general public, like violations of health or safety laws.[71] The Court also suggests that in some instances, a *Burk* tort claim will not lie if the plaintiff was terminated for seeking to vindicate the rights of another.

Here, Plaintiff was allegedly discharged for reporting a sexual assault and sexual harassment of her coworker.[72] She does not rely on criminal laws related to the sexual assault and/or harassment to embody actionable public policy,[73] but instead on general criminal statutes related to interference with law enforcement and the courts. These crimes are not health or safety laws, and thus, when committed, probably cannot be said to be against the general public. What's more, Plaintiff was not seeking to vindicate her own

---

[70] *Id*. at 787.

[71] *Id*. at 786 ("[T]o support a viable tort claim the public policy must truly be public, rather than merely private or proprietary.")

[72] Compl. (Dkt. 1) at 5−7.

[73] Plaintiff does cite 25 O.S. § 1350 in her complaint, but this law abrogates common law actions based on sex discrimination in the employment context. It would defy logic to allow this law to form the public policy basis for a *Burk* tort, since it eliminates the *Burk* tort for these specific kind of actions. The Court also notes that Plaintiff does not rely on this statute in her response.

legal rights and interests by reporting the sexual assault and harassment of a coworker. Viewed through the lens of *Hayes*, Plaintiff fails to state a *Burk* tort claim.

In the case establishing the *Burk* tort, the Oklahoma Supreme Court cited *Parnar v. Americana Hotels, Inc.*[74] to explain how courts should determine whether a clearly established public policy to support a *Burk* tort is violated:

> In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject."[75]

Again, Plaintiff does not allege that the cited statutes were violated. She alleges that "Oklahoma public policy supports the truthful reporting of crimes and condemns actions that would discourage such conduct,"[76] and discharge following reporting a crime and sexual harassment would arguably discourage such conduct. But the Court warned here, as it has done many occasions following this decision, that courts should "proceed cautiously" if asked to declare a new public policy to form the basis of a *Burk* tort.[77]

Based on the circumstances of this case and the absence of relevant case law, the Court finds dismissal is appropriate: no Oklahoma case law has addressed a *Burk* tort premised on the public policy underlying the cited criminal statutes; Plaintiff did not seek

---

[74] *Parnar v. Americana Hotels, Inc.*, 652 P.2d 625 (1982).

[75] *Burk v. K-Mart Corp.*, 1989 OK 22, 770 P.2d 24, 29 (quoting *Parnar*, 652 P.2d at 631).

[76] Compl. (Dkt. 1) at 7.

[77] *See, e.g., Moore*, 376 P.3d at 899.

to vindicate her own rights; and it is unlikely that Plaintiff sought to vindicate the rights of the general public because the cited criminal statutes do not relate to the health and safety of the general public.

The Oklahoma Supreme Court has commanded that "because the term 'public policy' [is] vague, the [public policy] exception [to the at-will employment doctrine] ha[s] to be tightly circumscribed."[78] The Court does so here, and, as a result, finds that Plaintiff's *Burk* tort claim must be dismissed without prejudice.

### *Proper Party*

Finally, Defendant Reynolds argues Plaintiff's state law claim must be dismissed because she did not name the proper party pursuant to 19 O.S. § 4.[79] The Court finds that this is not a basis for dismissal of Plaintiff's *Burk* tort claim.

Plaintiff argues that the Board of County Commissioners and the Treasurer are autonomous entities with separate powers, so she properly sued Defendant Reynolds because the Treasurer's Office, not the County, was her employer.[80]

19 O.S. § 4 states:

 In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, "Board of County Commissioners of the County of _____[.]" . . . Suit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to

---

[78] *Id.*

[79] Mot. to Dismiss Pl.'s Compl. & Supporting Br. (Dkt. 6) at 16.

[80] Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss (Dkt. 12) at 19–21 (citing 19 O.S. §§ 131, 339, 623).

plaintiff in an action not arising out of contract. Otherwise, suit may be brought against a county by naming the Board of County Commissioners of the County of _____; in actions against the Board not arising out of contract, upon motion, the Court may substitute a county officer identified in Section 161 of this title in his or her official capacity for the Board upon a showing that such county officer is better suited to represent and defend the county under the particular facts of the case.

Section 161 defines "county officer" to include the county treasurer.[81] Thus, Defendant Reynolds is the proper party because Plaintiff alleges that Defendant Reynolds in his official capacity as treasurer is directly liable to her in a non-contract action. Dismissal of Plaintiff's *Burk* tort claim is thus not warranted on this basis.

### Conclusion

The Court **GRANTS** Defendant's motion to dismiss (Dkt. 6). All claims are **DISMISSED WITHOUT PREJUDICE**, except those against Defendant Reynolds in his individual capacity and for punitive damages which are **DISMISSED WITH PREJUDICE**. As to those claims dismissed without prejudice, Plaintiff is granted leave to amend her complaint within fourteen (14) days of the date of this order.

**IT IS SO ORDERED this 3rd day of April, 2020.**



PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[81] 19 O.S. § 161.